FILED
01/10/2024
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 20, 2023 Session

## ERIC WAYNE BARTON v. MECHELLE SCHOLMER BARTON

**Appeal from the Chancery Court for Blount County**
**No. 2015-021          Telford E. Forgety, Jr., Chancellor**

_____

## No. E2022-01574-COA-R3-CV

_____

This is an appeal of a trial court's valuation of a marital asset, division of a marital estate, and award of alimony *in solido* as a result of the divorce of Eric Wayne Barton ("Husband") and Mechelle Scholmer Barton ("Wife").  In its 2018 Final Judgment of Divorce ("2018 Judgment"), the Chancery Court for Blount County ("the Trial Court") found that Husband's 100% interest in Vanquish Worldwide, LLC, ("Vanquish Worldwide") was marital property and that Vanquish Worldwide's outstanding claim for potentially $32 million against the U.S. Government ("Government Claim") was marital property.  The Trial Court accordingly awarded to Wife a portion of the Government Claim.  In Husband's first appeal, this Court reversed the Trial Court's finding that the Government Claim was marital property and its awarded portion to Wife.  This Court, concluding that the Government Claim was nevertheless relevant to an accurate valuation of Vanquish Worldwide and the total value of the parties' marital business interests, instructed the Trial Court on remand to revalue Vanquish Worldwide, and in doing so, to consider the Government Claim.  On remand, the Trial Court found that Husband had dissipated $12.375 million of the Government Claim proceeds by using the funds to satisfy a personal judgment against him.  The Trial Court accordingly added the dissipated $12.375 million to its $4 million valuation of Vanquish Worldwide.  Husband has appealed, contesting the Trial Court's consideration of the Government Claim proceeds in its valuation of Vanquish Worldwide, as well as its overall division of the marital estate, award of alimony *in solido*, and placement of a lien and an assignment in trust to Wife on Husband's ownership interests in his numerous LLCs, including Vanquish Worldwide.  We affirm the Trial Court's finding that Husband dissipated marital property and its valuation of Vanquish Worldwide but modify the Trial Court's judgment to the extent it awarded interest on Wife's award of alimony *in solido*.  The balance of the Trial Court's judgment is affirmed, including its division of the marital estate and award of alimony *in solido* to Wife.  We further decline to award Wife attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Modified in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

C. Scott Taylor, Elizabeth M. Towe, and Karen G. Crutchfield, Knoxville, Tennessee, for the appellant, Eric Wayne Barton.

Melanie E. Davis, Ashley Bentley, and Joel Reeves, Maryville, Tennessee, for the appellee, Mechelle Scholmer Barton.


**OPINION**


**Background**

As noted by the parties and the Trial Court, this case involves an "extensive and complicated" marital estate. This is the second time Husband has appealed the Trial Court's valuation and division of marital assets. This Court, in its opinion styled, *Barton v. Barton*, No. E2019-01136-COA-R3-CV, 2020 WL 6580562 (Tenn. Ct. App. Nov. 10, 2020) ("*Barton I*"), described the procedural history of the parties' divorce as follows:

> This is an appeal of a divorce case and centers on the classification, valuation, and division of an extensive marital estate amassed during an 18-year marriage. Eric Barton ("Husband") and Mechelle Barton ("Wife") met while Husband was in the Marine Corps, stationed at Camp Lejeune, North Carolina and Wife was employed at the PX on the base. The two were married in North Carolina in 1998. Each had a child from a previous marriage, and together, they had a daughter in 2000. In 2005, they adopted two sons, who were ages 3 and 4 at the time. The family later moved to Blount County, Tennessee in 2006.
>
> In 2005, Husband began doing private government contract work with the United States Army in Iraq. He subsequently began his own business, entering into contracts directly with the United States Government involving security, vehicle maintenance, and logistics. In 2007, he started Vanquish Worldwide, LLC ("Vanquish Worldwide"), a company that contracted with National Afghan Trucking to transport government goods to 400 military bases in Iraq. The business was very successful, and the parties amassed considerable assets during the years 2011-2015 until the contract was terminated in December 2015, a year

before it was set to expire. Husband also started many other businesses and acquired significant real estate during the course of the marriage.

Around this same time the marriage relationship deteriorated, and the parties separated in February 2015. Husband filed a complaint for divorce on the ground of irreconcilable differences on March 11, 2015. Wife filed an answer and counter-complaint for divorce on April 2, 2015, alleging irreconcilable differences and inappropriate marital conduct. The parties were able to settle most of their issues relating to parenting and child support prior to trial, but the trial court was called upon to resolve the grounds for awarding the divorce, divide the marital property, and resolve Wife's claim for alimony and attorney's fees.

Following a three-day trial in September 2016 at which Husband, Wife, and Wife's accounting expert testified, the court entered a Memorandum and Order on November 14, 2016, in which it adjudicated some, but not all, issues in the case. The Final Judgment for Divorce was ultimately entered on July 6, 2018, adjudicating all outstanding matters.

In the Final Judgment for Divorce, which incorporated the Memorandum and Order, the trial court granted Wife a divorce on the ground of Husband's inappropriate marital conduct and classified, valued, and divided the marital estate, with Wife receiving approximately 55 percent and Husband 45 percent. Husband was ordered to pay Wife the sum of $7,294,570.30 as alimony *in solido* to adjust the marital distribution in the estate, payable over a period of 10 years, with 119 monthly payments of $30,394.04 and a final balloon payment of $3,677,679.54. The Final Judgment also confirmed that the court awarded a lien on real property "whether the property is titled in the name of Eric Wayne Barton, Lexlin Gypsy Ranch, Vanquish Worldwide, LLC, and/or Vanquish Leasing" to secure payment of the alimony *in solido* award. Wife was also awarded her attorney's fees in the amount of $43,571.57 as additional alimony *in solido*.

The trial court also concluded, as it had in its Memorandum and Order, that a certain "contingent contractual claim" of Vanquish Worldwide against the U.S. Government, potentially worth $32 million dollars, was a marital asset subject to division. The court then proceeded to allocate the first $6,664,000.00 of any recovery from Vanquish Worldwide's claims, after litigation expenses were paid, to Husband, and allocated "any recovery beyond the first $6,664,000.00 as 55% to the Wife, and 45% to the Husband, net after reasonable litigation expenses."

- 3 -

Both parties filed motions to alter or amend the Final Judgment. Wife subsequently voluntarily dismissed her motion. Husband's motion was granted in part, in that the paragraph of the Final Judgment concerning the contractual claim was amended to provide that each party would be responsible for his or her *pro rata* share of taxes accrued from the amounts received. The court denied Husband's motion in part, refusing to strike the liens awarded to Wife on LLC assets to secure her alimony *in solido* award. Husband filed a timely appeal.

*Id.* at \*1-2 (footnotes omitted).

In *Barton I*, Husband contested the Trial Court's classification of certain business entities as marital property, valuation of marital property, division of marital property, and award of $43,571.57 in alimony *in solido* for payment of attorney's fees. One issue raised by Husband in *Barton I* was whether the Trial Court had erred in classifying Vanquish Worldwide as a marital asset. *Id.* at \*3. He specifically took issue with the following language from the Trial Court's 2018 Judgment: "*Vanquish Worldwide, LLC is a marital asset* and the Wife has an interest in Vanquish Worldwide, LLC as a marital asset." *Id.* This Court concluded that notwithstanding the Trial Court's imprecise language, it was evident that the Trial Court intended to classify Husband's <u>interest</u> in Vanquish Worldwide as marital property, which it awarded to Husband. *Id.* This Court accordingly affirmed the Trial Court's classification of Husband's ownership interest in Vanquish Worldwide as a marital asset. *Id.*

This Court also considered whether the Trial Court "had jurisdiction to act on the assets of the LLCs themselves once Husband was awarded his full membership interest in the LLCs as part of the court's division of the assets", whether the Trial Court had "erred in classifying an asset of Vanquish Worldwide, i.e., the $32.8 million contractual claim against the United States Government, as marital property", and whether the Trial Court had erred "in awarding Wife a lien to secure her alimony *in solido* payment against various parcels of real property that were owned by the LLCs and not Husband, individually." *Id.*

With respect to the liens placed on real estate owned by Husband's LLCs, this Court concluded:

Here, the trial court's judgment attempts to reach the real estate assets of both Husband and of three LLCs owned by Husband to secure his alimony *in solido* obligation. While Tennessee Code Annotated section 36-4-121(f)(2) grants courts the authority to impose a lien to effectuate an equitable distribution, and the court's judgment, once recorded, operates as a lien on the real property owned by Husband, *see* Tenn. Code Ann. § 25-5-101(b)(1), there is no statutory authority here for the court to act upon

- 4 -

parcels of real estate owned by the LLCs. Despite Husband's 100 percent ownership interest in the LLCs that owned these parcels of real estate, Tennessee Code Annotated section 48-249-502(a) provides that "[a] member has no interest in specific LLC property. All property transferred to or acquired by an LLC is property of the LLC." *See also* Tenn. Code Ann. § 48-215-101(a).

There is no debate that the LLCs were not parties in this case, even though Vanquish Worldwide filed a motion to intervene, which was denied. Thus, the court did not have jurisdiction over these entities and their assets, only the parties' ownership interest in the LLCs themselves. We, therefore, conclude that the real property owned by the LLCs could not be subjected to a lien to guarantee payment of Husband's alimony obligation, and we vacate those portions of the trial court's judgment granting Wife a lien on those parcels of real property owned by the LLCs.

*Id.* at *5.

In considering whether the Trial Court had erred in how it treated Vanquish Worldwide's contractual claim against the U.S. government, this Court concluded:

Because the assets of an LLC are separate from those of its members, we conclude that the contractual claim was not marital property and was therefore not subject to distribution to Wife. We, therefore, vacate the trial court's award to Wife of any interest in the contractual claim of Vanquish Worldwide.

In view of the fact that the trial court's order clearly reflects that it treated the contractual claim as an asset of Husband, separate from the value of the marital interest in Vanquish Worldwide, the value of Vanquish Worldwide and the net martial business interests have necessarily not been accurately computed. Indeed, the contractual claim of Vanquish Worldwide is relevant to an accurate valuation of Vanquish Worldwide and the total value of the parties' marital business interests. Therefore, we vacate that portion of the trial court's order pertaining to the valuation of the parties' marital business interests and remand this case so that the trial court can consider the impact of the contractual claim on the court's valuation. The trial court is free to take additional proof on the valuation of Vanquish Worldwide.

*Id.*

This Court also found that the Trial Court had erred in its calculation of the total value of the parties' business interests. This Court accordingly provided the following instruction:

> Although it is clear that the trial court overvalued the net marital business interests based upon its own findings, the court's calculations were, as alluded to earlier in this Opinion, divorced from a proper consideration of the impact of the contractual claim held by Vanquish Worldwide. The trial court effectively treated that contractual claim as a personal asset of Husband's that was subject to division. As we have concluded, it was an asset of the LLC, not subject to division. Its relevance relates to the value of Vanquish Worldwide. On remand, when the trial court reconsiders the valuation of the parties' marital business interests, the court should only specifically revalue Vanquish Worldwide in light of its previous failure to properly account for the contractual claim. It should then take the above calculation error into account when reevaluating the value of the total marital business interests.

*Id.* at *11. Husband also contested the Trial Court's division of the marital estate and award of attorney's fees to Wife, but this Court declined to weigh in on those matters given that it was remanding for the Trial Court to reconsider the value of the parties' marital business interests. As a result, it vacated the Trial Court's distribution of marital property and award of attorney's fees to Wife. *Id.*

Upon remand, the Trial Court entered an order in February 2022, deciding that it would value Vanquish Worldwide based upon its value at the time of the upcoming hearing. The Trial Court conducted a hearing to adjudicate the issues on remand from this Court on August 16 and 17 of 2022.

At the beginning of the hearing, the parties stipulated that Husband had made payments in the amount of $3,073,484.49 toward his alimony obligation to Wife since 2016 and that all child support issues had been resolved. The parties also agreed that the Trial Court should revalue only Vanquish Worldwide as of the day of the hearing and then consider this value in making a new equitable division of marital assets in accordance with *Barton I*.

During the hearing, Husband and Greg Guiney, executive vice president of Vanquish Worldwide, testified about the current state of the company. Husband testified that Vanquish Worldwide had been operating at a net loss during the past few years and that it was only surviving because he had been using his personal funds to keep it afloat. He speculated that the company would likely shut down by the end of the year or early next year. With respect to the Government Claim, Husband explained that Vanquish Worldwide had received $30 million after five years of litigation with the U.S.

government and that $8 million of those funds were used to pay attorney's fees. After receiving the Government Claim proceeds, Husband, Vanquish Worldwide, and various other LLCs owned by Husband entered into a settlement agreement with the Koshani family, who had previously sued Husband and won a $33 million judgment against him personally ("Koshani Judgment"). According to Husband, the Koshani settlement agreement ("Koshani Settlement") provided that Husband, Vanquish Worldwide, and his other LLCs would pay the Koshani family $14.65 million dollars in an exchange for a release of any claims of debts or liabilities. In addition, Husband testified that Vanquish Worldwide owed the U.S. government $3 million for a Paycheck Protection Program ("PPP") loan it had received during the COVID-19 pandemic. This would be repaid in the form of a credit to the U.S. government.

Husband's expert witness, Andrew Lowe, testified as to the value of a 100% equity interest in Vanquish Worldwide. Mr. Lowe utilized a valuation date of December 31, 2021, and valued the equity interest in Vanquish Worldwide at $1,040,000. Wife's expert witness, Renee Harwell, testified that she valued a 100% equity interest in Vanquish Worldwide as of June 30, 2022. She valued the equity interest at $7.47 million, but provided a value of $30.27 million if the proceeds from the Government Claim had remained in Vanquish Worldwide.

On October 10, 2022, the Trial Court entered an extensive "Memorandum and Order" ("2022 Judgment") adjudicating the valuation of Vanquish Worldwide and division of the marital estate. In its judgment, the Trial Court reiterated that the main issue upon remand was the current valuation of Vanquish Worldwide and the impact of the proceeds from the Government Claim. The Trial Court first noted that Vanquish Worldwide had received $22 million from its successful litigation with the U.S. government, after payment of $8 million in attorney's fees. The Trial Court determined that Vanquish Worldwide had transferred $18 million to other companies 100% owned by Husband, "VC3" and "Vanquish Leasing." The Trial Court emphasized that these transfers were made without agreement of the parties and without consultation with Wife.

The Trial Court also determined that Husband had used the Government Claim "proceeds or the products thereof" to pay the Koshanis $14.65 million in settlement of a judgment against him personally. The Trial Court noted that Husband testified that the Koshani Settlement released not only him personally but also Vanquish Worldwide. The Trial Court also noted Husband's testimony that the funds transferred to VC3 and Vanquish Leasing were "paid out for claims handling services rendered to" Vanquish Worldwide.

The Trial Court ultimately concluded that there was strong evidence that Husband had used the Government Claim proceeds to "enrich himself and/or to dissipate or hide them." The Trial Court did not credit Husband's valuation of Vanquish Worldwide or his explanation of the expenditure of the Government Claim proceeds. The Trial Court

attributed very little weight to Mr. Guiney's testimony about the company's value. The Trial Court found that Mr. Lowe had given "no real consideration to the impact of the receipt of the proceeds from the government claim." Ultimately, the Trial Court chose a mid-range value, setting Vanquish Worldwide's base value at $4 million.

In making an equitable division of marital property, the Trial Court found that no factors as set forth in Tenn. Code Ann. § 36-4-121(c) weighed in Husband's favor. The Trial Court found that factors (2), (3), and (4) weighed heavily in Wife's favor. The Trial Court found that factor (5), "contribution to preservation or dissipation of the marital property," strongly favored Wife. The Trial Court found that Husband had dissipated a portion of the proceeds from the Government Claim by using the funds to satisfy the Koshani Judgment. As a result, the Trial Court adjusted the value to Vanquish Worldwide "for distribution purposes" to reflect the receipt of these proceeds. Although Vanquish Worldwide was released along with Husband via the Koshani Settlement, the Trial Court emphasized that the Koshani Settlement was a result of a personal judgment against Husband. Accordingly, the Trial Court allocated a 10% benefit to Vanquish Worldwide as a legitimate business expense. The remaining 90% was treated as dissipated marital funds in that the settlement agreement primarily benefitted Husband personally—not the company. The Trial Court therefore added back 90% of the dissipated funds to the base value of $4 million.

In doing so, the Trial Court deducted the LLC tax rate of 27.5% from the $30 million Government Claim proceeds and then deducted the $8 million owed in attorney's fees for a total of $13.75 million. Assigning a 10% benefit to Vanquish Worldwide, the Trial Court determined that Husband had dissipated 90% of the funds, or $12.375 million. After adding this number to the base value of $4 million, the Trial Court found that Vanquish Worldwide would be valued at $16.375 million.

In dividing the marital estate, the Trial Court again awarded Husband all of the marital business interests, which were assigned a net value of $11,347,502.11. Given the Trial Court's award of the business interests to Husband, the marital estate was divided such that $19,918,123.50 in property was awarded to Husband and $3,052,236.50 in property was awarded to Wife. However, the Trial Court retained its original 2018 determination that the equitable division of the marital estate should result in a 55% award to Wife and 45% award to Husband. Therefore, the Trial Court went through the same process it did in its 2018 Judgment by awarding Wife alimony *in solido* to adjust the imbalance in the division of the marital estate, this time with the new valuation for Vanquish Worldwide accounted for.

The Trial Court accordingly ordered Husband to pay to Wife $6,507,977.50 as alimony *in solido* plus interest. This value was on top of the $3,073,484 that Husband had already paid to Wife in alimony. With alimony *in solido* taken into consideration, the equitable division of marital property was as follows: $12,633,698 to Wife and

$10,336,662 to Husband. The Trial Court did not award to Wife attorney's fees as alimony *in solido* inasmuch as she did not offer proof of her current income or needs.

Given Husband's previous threats to bankrupt the parties' businesses or hide assets, the Trial Court impressed a lien and an assignment in trust to Wife upon Husband's ownership interests "in all of the businesses" listed in Exhibit 1 of its 2022 Judgment. The Trial Court provided that: "so long as any part of the alimony obligation remains unpaid the Husband will be enjoined and prohibited from making any transfers or expenditures of, or from the businesses except those made in the usual and ordinary course of business."

On October 26, 2022, the Trial Court entered an "Order Amending Judgment," correcting some mathematical errors, which we have accounted for in our above-stated summary of the Trial Court's final division of marital property and award of alimony *in solido*. Husband timely appealed.

## Discussion

Although not exactly stated as such, Husband raises the following issues on appeal: (1) whether the Trial Court erred in its valuation of Vanquish Worldwide, (2) whether the Trial Court erred in awarding 55% of the marital estate to Wife and 45% to Husband, (3) whether the Trial Court erred in awarding Wife $6,507,977.50 with interest in alimony *in solido*, and (4) whether the Trial Court erred in placing a lien and an assignment of trust to Wife upon Husband's ownership interests in his LLCs. Upon our review, we modify the Trial Court's award of interest on Husband's payment of alimony in *solido*. We affirm the balance of the Trial Court's judgment including its consideration of the Government Claim proceeds in its valuation of Vanquish Worldwide, and specifically its finding that Husband dissipated assets meant to be accounted for in the valuation of Vanquish Worldwide.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). With respect to credibility determinations, the Tennessee Supreme Court has instructed:

> When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a

trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). In order for evidence to be clear and convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009)). Whether the evidence is clear and convincing is a question of law that appellate courts review de novo without a presumption of correctness. *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 (Tenn. 2013), (citing *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010)), *cert. denied*, ⸺ U.S. ⸺, 134 S.Ct. 224, 187 L.Ed.2d 167 (2013).

*Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014). Insofar as the issues on appeal implicate the abuse of discretion standard, "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

### A. Dissipation

The primary issue on appeal is the Trial Court's valuation of Vanquish Worldwide. Husband particularly contests the Trial Court's consideration of the Government Claim proceeds in its valuation of Vanquish Worldwide. However, we note that Husband does not argue that the Trial Court erred in assigning Vanquish Worldwide a base value of $4 million. Husband rather argues that the Trial Court erred by adding the portion of the Government Claim proceeds that Husband spent to satisfy the Koshani Judgment to the value of Vanquish Worldwide. The Trial Court added $12.375 million to Vanquish Worldwide's value based upon its finding of dissipation. Therefore, considering that Husband does not contest the Trial Court's initial $4 million valuation of Vanquish Worldwide, we conclude that this issue is more appropriately considered through the lens of the division of marital assets and, specifically, the issue of dissipation.

Regarding dissipation of marital assets, this Court has previously explained:

Tennessee Code Annotated section 36-4-121(c)(5)(B) provides that "dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed."

- 10 -

A party's dissipation of marital or separate property is one of many factors a trial court may take into consideration in making an equitable division of a marital estate. Tenn. Code Ann. § 36-4-121(c)(5). While there is no statutory definition of dissipation, the term typically refers to the use of marital property for a purpose unrelated to the marriage, often to "hide, deplete, or divert" marital property after a marriage is irretrievably broken. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. Ct. App. 2010). "The concept of dissipation is based on waste." *Altman v. Altman*, 181 S.W.3d 676, 681 (Tenn. Ct. App. 2005).

In determining whether dissipation has occurred, the court "must distinguish between dissipation and discretionary spending." *Larsen-Ball*, 301 S.W.3d at 235. While discretionary spending may be ill-advised, "it is typical of the parties' expenditures throughout the course of the marriage." *Id.* Expenditures that constitute dissipation, on the other hand, are so far removed from normal expenditures that they can be characterized as wasteful or self-serving. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). In *Watson*, this Court discussed the appropriate analysis for allegations of dissipation:

> In determining whether dissipation occurred, we find trial courts should consider the following: (1) whether the evidence presented at trial supports the alleged purpose of the various expenditures, and if so, (2) whether the alleged purpose equates to dissipation under the circumstances. The first prong is an objective test. To satisfy this test, the dissipating spouse can bring forward evidence, such as receipts, vouchers, claims, or other similar evidence that independently support the purpose as alleged. The second prong requires the court to make an equitable determination based upon a number of factors. Those factors include: (1) the typicality of the expenditure to this marriage; (2) the benefactor of the expenditure, namely, whether it primarily benefitted the marriage or primarily benefitted the sole dissipating spouse; (3) the proximity of the expenditure to the breakdown of the marital relationship; (4) the amount of the expenditure.

*Id.* at 490-91 (quoting *Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 WL 31845229, at *3 (Tenn. Ct. App. Dec. 19, 2012)). The party alleging dissipation has "the initial burden of production and the burden of persuasion at trial." *Larsen-Ball*, 301 S.W.3d at 235. Once the party alleging dissipation establishes that the money has been dissipated, "the

- 11 -

burden shifts to the party who spent the money to produce evidence to show that the expenditures were appropriate." *Watson*, 309 S.W.3d at 491 (quoting *Wiltse v. Wiltse*, No. W2002-03132-COA-R3-CV, 2004 WL 1908803, at *4-5 (Tenn. Ct. App. Aug. 24, 2004)). The trial court's determination of whether a party dissipated marital assets is a finding of fact. *See Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005). Dissipation is generally "intentional and purposeful conduct that has the effect of reducing the funds available for distribution." *Id.* (citation omitted). A court may look at whether the spouse "intended to hide, deplete, or divert a marital asset." *Id.* (quoting *Long v. Long*, No. M2006-02526-COA-R3-CV, 2008 WL 2649645 at *9 (Tenn. Ct. App. July 3, 2008)).

*Trezevant v. Trezevant*, 568 S.W.3d 595, 616-17 (Tenn. Ct. App. 2018).

In its 2022 Judgment, the Trial Court made the following findings related to Husband's testimony:

In its Memorandum and Order of November 14, 2016 this Court noted that the Husband had valued all of the parties' business interests at zero. The Court found that it simply could not accredit the Husband's testimony. Memo and Order of November 14, 2016 at p.p. 6, 7. More importantly to the current proceeding, the Court noted:

*The Wife testified that on multiple occasions the Husband told her he would bankrupt the businesses and/or hide assets so that she would get nothing in the divorce. *And it may very well be that an element of this exists in this case. Id* at p. 7, *Emphasis added*.

In addition to the direct evidence, there is strong circumstantial evidence to the effect that the Husband was trying to use the proceeds from the government claim in such a way as to enrich himself and/or to dissipate or hide them so that the Wife could get no benefit from them. For example:

*The proceeds from the government claim were received in 2018, after this Court's judgment of Nov. 2016.

*This Court had found that the government claim was a marital asset and had awarded the Wife a share of them. Nov. 14, 2016 Order at p. 8. (The Court of Appeals found that the ownership of Worldwide was a marital asset and that the government claim should be reflected in the value of the

- 12 -

Company.  Of course, the Wife had a marital interest in the value of the Company.)

*At least some $18,000,000 of the claim proceeds were paid out of Worldwide and into VC3 and Leasing in 2018-19 while this case was on appeal.  This was done without permission of the Court and without agreement by the Wife.[1]

*VC3 and Leasing are owned 100% by the Husband.  They are located in the same building as Worldwide.  VC3 has three employees—one of whom is Mr. Barton—and Leasing has none.  Ex. 10, Harwell Report p.p. 14-17.

*Some $14.65 million of the claim proceeds or the products thereof, were used by the Husband to settle a $33,000,000 judgment against him personally, and not against Worldwide.  This was done in July 2020, before the Court of Appeals released its opinion in November of 2020.  And again, this was done without consultation with any Court or agreement of the Wife.

Of course, any fact can be proven by direct evidence, circumstantial evidence, or a combination of the two.  *In Re M.O.* 173 S.W. 3d 13, 20 (Tenn. Ct. App. 2005) *perm app den.*; *State v Phillips*, 138 S.W. 3d 224, 230-31 (Tenn. Ct. App. 2003) *perm. app. den.*

Based on all of the evidence the Court concludes it cannot accredit the Husband as to the valuation of Worldwide, or as to his explanation of the expenditure of the proceeds from the government claim (except as to the payment of the personal judgment against him).  Furthermore, to the extent the Husband's witnesses attempted to testify as to the legitimacy of the transfer of the funds from Worldwide to VC3 and Leasing for claims handling services, the Court does not accredit them either.  Finally, the Court concludes that the Husband handled the proceeds of the claim so as to enrich himself; to minimize the value of Worldwide on paper; and to defeat or minimize the value of the Wife's interest in the Company.  In other words, he did just what he had threatened he would do.

---

[1] Testimony from Husband and Ms. Harwell indicated that funds from the Government Claim were first used to pay off contractual consulting fees to VC3 and Vanquish Leasing before being used to settle the Koshani Judgment against Husband.

- 13 -

The Trial Court then considered the factors enumerated in Tenn. Code Ann. § 36-4-121(c) in dividing the marital property. The Trial Court found that Husband's dissipation or failure to preserve the value of Vanquish Worldwide strongly weighed in Wife's favor, citing to factor (5), which provides:

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

In considering factor (5), the Trial Court made the following findings:

The evidence here clearly establishes that the Husband as owner of Worldwide failed "to save that which already existed"—i.e., the $22,000,000 proceeds of the government claim came into Worldwide, and now it is gone. Further, Husband spent it without consent of the Wife or the Court. And, with the bulk going to settle a $33,000,000 judgment against himself personally. This payment was certainly not a "usual and ordinary" business expense. The Court also finds that all four of the "dissipation" factors are met in this case. Thus, it is appropriate that the Court ". . . adjust the division of marital property accordingly". *Kholgi* [*v. Aliabadi*, No. M2019-01793-COA-R3-CV, 2020 WL 5607816,] at *62 [(Tenn. Ct. App. Sept. 18, 2020)]. The adjustment could be made by using the Court's value of Worldwide found above without adding anything for the proceeds from the government claim, and then adjusting the percentages of the marital estate awarded to the parties. Or, it could be made by adjusting the value of Worldwide for distribution purposes to reflect the receipt of all, or a portion of the claim proceeds. It is this latter method which the Court will use.

***

According to Mr. Barton he paid some $14,650,000 in money and property out of the proceeds to settle the federal court judgment against him. . . . The Husband claims that Worldwide got the benefit of the $14,650,000 in settlement funds paid because it was released along with VC3, Leasing and

- 14 -

five other entities owned by him when the case was resolved. Trial Ex. 2. However, the fact remains that the judgment was a personal liability to the Husband and not to Worldwide. And, once again, the Husband has not provided any details as to the basis for the judgment against him, or the other suits which were released without litigation in the settlement of the claim against him. (The settlement agreement refers to a claim by Vanquish Worldwide *as Plaintiff* against Mr. Khoshani,[2] and an interpleader action filed by a third party against Mr. Barton, Mr. Khoshoni and certain others. *See*, Trial Ex. 2.) In sum, the great majority of the benefit of the $14.65 million in settlement funds paid inured to Mr. Barton individually. Nevertheless, perhaps Worldwide did receive some benefit from the settlement and release. Therefore, the Court will allocate 10% or $1,465,000.00 of the benefit to Worldwide.[3]

On appeal, Husband argues that the Trial Court erred in finding that he had dissipated marital assets by using proceeds from the Government Claim to settle the Koshani Judgment against him. Husband specifically argues that "there was no testimony or evidence presented at trial that the Husband dissipated marital assets", "no testimony or evidence at trial that Vanquish's use of the proceeds from its claim with the U.S. Government was not in the ordinary course of its business", and "no testimony or evidence at trial that the transactions between Vanquish Worldwide and related entities to settle and resolve the Koshani Judgment through the Confidential Settlement Agreement was not made in the ordinary course of business, or did not benefit Vanquish Worldwide." Husband's contention that there was no testimony or evidence that the use of the Government Claim proceeds was not in the ordinary course of business or that his use of these funds mostly benefitted himself personally, ignores Husband's own testimony and the particularly important fact that the Trial Court did not accredit Husband's explanation for the expenditure.

We emphasize that we "accord considerable deference to the trial court's factual findings" when "issues of credibility and weight of testimony are involved" and because "trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court." *See Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). We further note that whether dissipation has occurred is often a "fact and credibility driven decision." *Kholghi v. Aliabadi*, No. M2019-01793-COA-R3-CV, 2020 WL 5607816, at *15 (Tenn. Ct. App. Sept. 18, 2020) (quoting *Slocum v. Slocum*, No. M2016-01881-

---

[2] "Koshani" is spelled a number of different ways in the record. We base our spelling of "Koshani" on the Koshani Settlement agreement.

[3] These numbers were adjusted in the Trial Court's "Order Amending Judgment" based upon a mathematical error.

COA-R3-CV, 2017 WL 4804553, at *6 (Tenn. Ct. App. Oct. 24, 2017)). The Trial Court did not find Husband to be credible, specifically finding that his testimony regarding the valuation of Vanquish Worldwide and his explanation for the expenditure of the proceeds from the Government Claim lacked credibility. As this Court has explained many times before, "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Husband has not pointed us to any evidence that would compel us to re-evaluate the Trial Court's credibility determination, and we accordingly defer to the Trial Court's credibility determination in this instance.

Upon our review, we conclude that the evidence does not preponderate against the Trial Court's findings. In its 2018 Judgment, the Trial Court ordered that Husband would receive the first $6.664 million of the Government Claim and that the remainder of the proceeds would be allocated 55% to Wife and 45% to Husband. On August 3, 2018, Husband filed a Rule 59 motion to alter or amend, arguing, *inter alia*, that the Trial Court should strike its award to Wife of any of the proceeds from the Government Claim inasmuch as Vanquish Worldwide was not a party and that the Trial Court had no jurisdiction to make such an award of the nonparty LLC's property. In an order entered on June 6, 2019, the Trial Court granted in part Husband's motion to alter or amend but specifically denied the argument set forth above. Husband thereafter appealed.

On June 10, 2019, the United States District Court for the Eastern District of Tennessee ("the federal court") entered a judgment in favor of Shafiqullah Koshani against Husband personally, as it related to a breach of a "Profit Sharing Agreement." As a result, Mr. Koshani entered into a settlement agreement with Husband, Vanquish Worldwide, and several other LLCs owned by Husband. The settlement agreement was executed on July 31, 2020, while *Barton I* was pending. According to Husband, the price of the settlement was $14.65 million, mostly paid with transfers of property. A portion of the Government Claim proceeds was used by Husband to pay off the debts on these properties as part of the Koshani Settlement. Husband acknowledges in his appellate brief that he testified that "the money received by Vanquish Worldwide, LLC on its claim with the federal government . . . ultimately went to fund the majority of the Confidential Settlement Agreement to conclude the multiple claims and judgments involving the Koshani family." This factual finding is therefore undisputed by Husband.

As this Court determined in *Barton I*, the Trial Court erred in treating the Government Claim as marital property and distributing a portion to Wife. *See Barton*, 2020 WL 6580562, at *5. Nevertheless, this Court very clearly stated that "the contractual claim of Vanquish Worldwide is relevant to an accurate valuation of Vanquish Worldwide and the total value of the parties' marital business interests." *Id.* This Court likewise affirmed that Husband's 100% interest in Vanquish Worldwide was marital property. *Id.* at *3 ("We affirm the trial court's classification of Husband's ownership interest in Vanquish Worldwide as a marital asset."). Therefore, given that the

proceeds from the Government Claim were ordered by this Court to be accounted for in its valuation of Vanquish Worldwide on remand, the Trial Court was specifically tasked with considering the impact of the Government Claim on Vanquish Worldwide's value. Consideration of the Government Claim as part of the value of Vanquish Worldwide was in fact the purpose of the remand from this Court in *Barton I*. Yet, this purpose was thwarted by Husband, who spent a large portion of the Government Claim proceeds, apparently while the appeal in *Barton I* was still pending. We therefore are unable to agree with Husband that the Trial Court acted improperly by considering the Government Claim in its valuation of Vanquish Worldwide.

In reviewing the Trial Court's finding of dissipation, we find this Court's prior opinion, *Kholghi v. Aliabadi*, No. M2019-01793-COA-R3-CV, 2020 WL 5607816 (Tenn. Ct. App. Sept. 18, 2020), analogous to the facts of the present case. In *Kholghi*, the husband and his father owned a rug business called MSM Industries ("MSM"). *Kholghi*, 2020 WL 5607816, at *1. The husband had historically taken out "shareholder loans" from MSM every month in addition to traditional compensation. *Id.* at *3. As explained by this Court's *Kholghi* opinion,

> When the bill arrived each month, they would simply tell the company's accountant which expenses they deemed "personal" or "business." The designated "business" expenses would be expensed through the business. The "personal" expenses would also be paid by MSM but would be recorded as a "loan" to each shareholder. . . . According to the company's records, MSM paid Husband traditional W-2 compensation of around $215,000 per year. However, each month Husband would void his paycheck, and the amount of the voided paycheck would then be credited as a payment toward his shareholder loans. In August 2016, the month before the complaint for divorce was filed on September 8, MSM records showed that Husband owed $592,285.96 in shareholder loans. By November 2018, just before trial, his shareholder loan balance had increased to $1,781,624.46, the largest balance in the history of the company. . . . Husband's "personal" charges making up the shareholder loans included some items that benefitted Wife, such as payment of the mortgage for the marital home and the parties' attorney's fees. However, other expenditures did not benefit Wife, such as Husband's apartment rent and related bills, a portion of the payment for his Porsche, and expenses for his grown children.

*Id.*

The husband's 50% interest in MSM was deemed a marital asset awarded to the husband, much like Husband's 100% interest in Vanquish Worldwide was awarded to him in the present case. *Id.* at *10, 20. In *Kholghi*, the trial court valued the husband's

- 17 -

one-half interest in MSM at $2,170,000. *Id.* at \*9. In considering the husband's request that this value be "offset against the amount of the loans" he owed the company, the trial court noted that "if it subtracted the $1.7 million in shareholder loans from its finding as to the value of the marital asset, Husband's interest in MSM would only be valued at $388,376" and declined to do so. *Id.* The trial court instead decided that of the $1,781,624 borrowed from the company, $1,350,000 constituted legitimate marital expenses but that the remaining $431,624 constituted the husband's "dissipation in the amount of $249,581 and approximately $182,043 in separate debts" for which the trial court would not give him credit against the value of the company. *Id.* The trial court determined that some expenditures did not benefit the wife, that some "<u>were detrimental to her by reducing the value of her equitable interest in the parties' share of the business</u>," and that by listing these expenditures as loans from MSM, the husband had diminished the value of his and the wife's ownership interest. *Id.* at \*16 (emphasis added).

The trial court accordingly found that the value of MSM was $820,000 after offsetting the $1,350,000 that the trial court characterized as legitimate expenses from its initial valuation of $2,170,000. *Id.* On appeal, this Court affirmed the trial court's finding of dissipation and valuation of MSM. *Id.* at \*16-20. This Court explained: "Given the trial court's responsibility to consider Husband's 'preservation' or 'depreciation' of marital assets, Tenn. Code Ann. § 36-4-121(c)(5), we discern no reversible error in the trial court's decision to recognize 75 percent of the shareholder loan balance as legitimate and 25 percent as illegitimate." *Id.* at \*19.

In the present case, the Trial Court similarly found that Husband had dissipated funds of Vanquish Worldwide to diminish its value and benefit him personally. As already explained, this determination was largely based on Husband's testimony and the Trial Court's finding that Husband was not credible. It is undisputed that Husband used proceeds from the Government Claim, the subject of ongoing litigation, to satisfy a personal judgment against him. As a result, the Trial Court added the value of 90% of the expenditure back into the value of Vanquish Worldwide as dissipated assets. Although Husband testified that the Koshani Settlement was related to the National Afghan Trucking contract and the Government Claim, it is nonetheless undisputed that Husband entered into the Koshani Settlement agreement to satisfy a judgment entered against him personally.

In finding dissipation, the Trial Court considered the following four factors outlined in *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005):

> The factors that courts most frequently consider when determining whether a particular expenditure or transaction amounts to dissipation include: (1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties

or were contemplating divorce; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert a marital asset.

*Id.*[4] The Trial Court found that all four factors indicating dissipation had been met. Again, the Trial Court did not credit Husband's testimony and found that this expenditure primarily benefitted Husband rather than the marital asset. The Trial Court likewise found that Husband had intended to deplete the value of his ownership interest in Vanquish Worldwide, finding that Husband lacked credibility and referencing Wife's testimony from the 2016 trial that Husband had threatened to bankrupt his companies so she would not receive anything and Husband's initial valuation of Vanquish Worldwide at $0 during the 2016 trial. This expenditure appears to have been made while this case was pending on appeal in *Barton I*, approximately five years after Husband filed for divorce. The expenditure of $12.375 million certainly was not de minimis, particularly considering it consisted of the majority of the Government Claim net proceeds which were intended to be used in the Trial Court's re-valuation of Vanquish Worldwide. We therefore discern no reversible error in the Trial Court's analysis or finding of dissipation.

Husband argues that the Trial Court erred by concluding that the Koshani Settlement was a personal debt to Husband rather than to Vanquish Worldwide, given that Vanquish Worldwide also was released from any further claims. However, the Trial Court accounted for a portion of the Koshani Settlement benefiting Vanquish Worldwide by allocating a 10% benefit to the company. Vanquish Worldwide was just one of many of Husband's LLCs released by the settlement agreement. Again, the Koshani Settlement was in satisfaction of a personal judgment against Husband, and Husband used funds that were the subject of active litigation to satisfy that judgment. In the alternative, Husband contends that if the Koshani Settlement is his personal debt, then it should have been considered a marital liability given that the Koshani Judgment arose from "the performance of a U.S. Government National Afghan Trucking ("NAT") Contract" in 2011 and 2012, during the marriage. Based upon our review of the record, we conclude that Husband has waived this argument. Mr. Koshani filed suit against Husband and Vanquish Worldwide in 2017 prior to the Trial Court's 2018 Judgment. Yet, Husband did not claim this as a marital liability or raise this argument until the current appeal. Husband never claimed this as a marital liability on remand and cannot now raise this issue on appeal for the first time. *Ussery v. City of Columbia*, 316 S.W.3d 570, 580 (Tenn. Ct. App. 2009) ("Generally, issues not raised at trial may not be raised for the first time on appeal.").

---

[4] The factors outlined in *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005) are substantially similar to the factors previously quoted in this Opinion from *Trezevant v. Trezevant*, 568 S.W.3d 595, 616-17 (Tenn. Ct. App. 2018).

Husband additionally argues that by finding dissipation, the Trial Court, in effect pierced the corporate veil. Husband contends the following:

> As this Court recognized in the first appeal of this case, the Trial Court does not have jurisdiction over the assets of the non-party limited liability companies in which the Husband has an interest, without piercing the corporate veil. (Opinion at p. 8). All property transferred to or acquired by an LLC is property of the LLC. Tenn. Code Ann. § 48-249-502(a). Furthermore, a member of an LLC has no interest in specific property of the LLC. (*Id.*). In order to classify the entity and assets of Vanquish Worldwide, LLC as the parties' marital property by piercing the corporate veil, the Trial Court must find that Husband Eric Barton is the alter ego of Vanquish Worldwide, LLC, and has committed misconduct as a principal and officer of the company. See Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc., 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) ("[d]iscarding the fiction of the corporate entity, or piercing the corporate veil, is appropriate when the corporation is liable for a debt but is without funds to pay the debt, and the lack of funds is due to some misconduct on the part of the officers and directors."). There is no such finding by the Trial Court in this case, or evidence in the Record to support such a finding.

We find Husband's argument unavailing.

As this Court concluded in *Barton I*, despite its imprecise language, the Trial Court classified Husband's ownership interest in Vanquish Worldwide as marital property—not Vanquish Worldwide itself. Furthermore, although this Court reversed the Trial Court's award of Vanquish Worldwide's property, i.e. a portion of the Government Claim proceeds, to Wife, it nevertheless remanded for Vanquish Worldwide to be revalued after taking into account the Government Claim proceeds. Therefore, the Trial Court rightly considered the proceeds of the Government Claim in its valuation of Vanquish Worldwide, as instructed by this Court. In doing so, the Trial Court found that Husband had dissipated assets of Vanquish Worldwide, of which his 100% interest is, in fact, a marital asset. As discussed above, this Court has previously concluded that diminishing the value of a marital business interest may constitute dissipation of marital assets. *See Kholghi*, 2020 WL 5607816, at *17-20. The evidence demonstrated that Husband did in fact dissipate a marital asset, his 100% ownership interest in Vanquish Worldwide, by using the Government Claim proceeds as he did. Although, as explained in *Barton I*, the Government Claim proceeds were a nonparty asset, these proceeds were nevertheless to be used in the Trial Court's valuation of Husband's ownership interest in Vanquish Worldwide. By expending these proceeds to satisfy a personal judgment against him, he effectually diminished the value of his ownership interest to benefit himself personally. We accordingly conclude that there was no need for the Trial Court to pierce the corporate veil in finding that Husband had dissipated the marital asset of his

- 20 -

100% ownership interest in Vanquish Worldwide, and affirm the Trial Court's finding of dissipation.

## B. Division of Marital Estate

In *Keyt v. Keyt*, 244 S.W.3d 321 (Tenn. 2007), the Tennessee Supreme Court articulated the appellate standard of review for a trial court's division of a marital estate as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt*, 244 S.W.3d at 327.

In *Larsen-Ball v. Ball*, 301 S.W.3d 228 (Tenn. 2010), our Supreme Court effectively reasserted the deferential standard of review articulated in *Keyt*, stating:

> After classifying the divorcing parties' assets as either separate or marital, the trial court must divide the marital estate equitably by weighing the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c). We give great weight to the trial court's division of marital property and "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt*,

244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

Tennessee Code Annotated section 36-4-121(c) provides that in making an equitable division of marital property, the trial court shall consider all relevant factors. Because trial courts have broad discretion in dividing the marital estate, the division of marital property is not a mechanical process. *Flannary* [*v. Flannary*]*,* 121 S.W.3d [647,] at 650 [(Tenn. 2003)]. Rather, the trial court should weigh the most relevant factors in light of the facts of each case. *Tate v. Tate*, 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003). We review the trial court's findings of fact de novo with a presumption of correctness and honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008). When issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact. *Keyt*, 244 S.W.3d at 327.

*Larsen-Ball*, 301 S.W.3d at 234-35 (footnote omitted).

Tenn. Code Ann. § 36-4-121 (West July 1, 2014 to June 30, 2015) provides:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

- 22 -

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

The Trial Court awarded 55% of the marital estate to Wife and 45% to Husband. In its 2022 Judgment, the Trial Court analyzed the factors in Tenn. Code Ann. §36-4-121(c) and found that factors (2), (3), (4), and (5) "strongly indicate that the Wife should receive the greater share of the estate." With the exception of factor (5), the Trial Court had weighed the same factors in favor of Wife in its 2018 Judgment. After the 2016 trial, the Trial Court found that factor (8) had favored Wife, but in its 2022 Judgment concluded that "there was no evidence as to the parties' current incomes and exact financial circumstances." With respect to Husband, the Trial Court found there were "no factors that favored the Husband, nor are there today."

Husband argues that the "preponderance of the evidence weighs against the Trial Court's unequal and inequitable division of the marital estate." Husband specifically contends that Wife's award of $12,633,698 in marital assets far exceeds her monthly expenses of $13,000, that Wife is not burdened with any liability or debts, and that Wife is educated, skilled, and capable and desirous of employment. Husband further appears to suggest that the Trial Court erred by dividing the marital estate and awarding alimony *in solido* without hearing Wife's testimony regarding her income, employment, and financial status as of August 2022. On the other hand, Husband argues that the Trial Court's division of marital property "discounts the testimony and evidence presented by the Husband at the trial on remand regarding the negative impact on the value of Vanquish Worldwide and the Husband's other business interests by the factors outlined

- 23 -

above that were beyond the Husband's control, as well as the Husband's significant contributions from his retirement accounts to Vanquish Worldwide, in order to keep the business from closing down."

With respect specifically to Husband's argument related to the value of Vanquish Worldwide and Husband's testimony regarding its valuation, we reiterate that Husband does not contest on appeal the Trial Court's finding that a 100% interest in Vanquish Worldwide was valued at $4 million, notwithstanding the dissipated funds. Furthermore, as we previously explained, the Trial Court did not find Husband's testimony regarding Vanquish Worldwide's valuation to be credible, and we defer to that credibility finding. We accordingly find Husband's arguments related to the decline in his business interests to be unavailing.

Regarding Husband's suggestion that the Trial Court needed to hear new testimony regarding the status of Wife's finances prior to dividing the marital estate and awarding alimony *in solido*, Husband did not raise this issue with the Trial Court, or claim that Wife's circumstances had changed. We therefore find that Husband has waived this issue by failing to raise this issue to the Trial Court. Furthermore, we look to the language of this Court's instructions in *Barton I*. In *Barton I*, this Court remanded for the Trial Court to reconsider its valuation of Vanquish Worldwide in light of the Government Claim proceeds. This Court specifically stated: "Here, a final division has yet to occur in light of our disposition and remand, and we leave it to the trial court's discretion as to <u>what proof is needed to reconsider its valuation of Vanquish Worldwide</u> as part of its reevaluation of the marital estate as it takes proper account of the contractual claim of Vanquish Worldwide." *Barton*, 2020 WL 6580562, at *11 (emphasis added). Simply stated, this Court remanded for reconsideration of a particular marital asset and provided that the Trial Court could hear new proof as it pertained to that asset. We did not remand for a new trial or instruct the Trial Court to hear new evidence related to anything other than Vanquish Worldwide and the impact of the Government Claim. The Trial Court could have, of course, requested that the parties put on proof related to this issue, but again, Husband did not raise this issue. We therefore are unpersuaded by Husband's argument.

We find no error in the Trial Court's findings that factors (2), (3), and (4) strongly weighed in Wife's favor. With respect to factor (2), the Trial Court found that Husband's skill and earning capacity far exceed Wife's and that they both have substantial needs. Regarding factor (3), the Trial Court found that Wife had contributed greatly to Husband's education, and concerning factor (4), the Trial Court found that Husband had a much greater ability for future acquisition of assets. The evidence does not preponderate against these findings.

The evidence in 2016 and 2022 revealed that Husband was a successful businessman who had earned several degrees and accumulated substantial business and

real estate assets by the time he was 40 years old. During the marriage, Husband earned a Master's of Business Administration, Master's of Public Administration, and a Doctorate of Business Administration, as well as graduated from seminary. He also was honorably discharged from the military as a captain. In contrast, while Husband was pursuing higher education and his business ventures, Wife was a homemaker, who put off seeking further degrees to afford Husband opportunities to do so.

In 2016, the evidence demonstrated that Wife had a Bachelor's of Science in Legal Studies and had worked as a paralegal for two different law firms from 2000 to 2006, and then worked for Vanquish Worldwide as a paralegal and partner from 2006 to 2015. Wife testified that she did mostly secretarial work for Vanquish Worldwide. She also testified that she worked for Lexlin Ranch, another LLC owned by Husband. During the 2016 trial, Wife testified:

> [O]ur whole marriage he was also seeking another degree, so it was very hard for me to ever get a degree because both of us could not go to school and have our families and work. Our children would have suffered. So it's me who didn't attend school or get my other degree.

Wife also explained that since Husband had filed for divorce in March 2015 she had applied for a job at Belk as a makeup consultant, multiple jobs as a paralegal with law firms, jobs with Clinique and Estee Lauder, and a job for a "legal private investigation position." She further testified that she was a finalist for a position at a company involved in horse registrations. She stated that if she were to get that position, she would make $35,000 per year. The evidence accordingly supports the Trial Court's findings regarding these three factors, as well as factor (5) which we already have addressed and affirmed.

Husband also posits that the "55/45" split is inequitable because Wife received $2,297,036 more than he does without receiving any marital liabilities or debts. Keeping in mind that we afford trial courts "wide latitude in fashioning an equitable division of marital property . . . and appellate courts accord great weight to a trial court's division of marital property," *Altman*, 181 S.W.3d at 683, we do not discern how a differential of approximately $2 million renders the Trial Court's division inequitable, particularly considering the size of the marital estate and all the other factors properly considered by the Trial Court. *See id.* ("A division of marital property is not rendered inequitable simply because it is not precisely equal."). Besides asserting that this difference is "substantial," Husband offers little explanation or argument on this point. Moreover, with respect to Husband's objection to Wife being awarded no debt, we fail to discern what difference this makes to the overall net division of the marital estate. Although the Trial Court allocated the marital business debts to Husband, the Trial Court accounted for and subtracted these values from the assets Husband was awarded for a total share of $10,336,662, or 45% of the marital estate.

Husband further argues that, by his calculations, the Trial Court's division actually renders him with a share of negative $14,230,990.50 and Wife with $13,235,015.50. Husband's argument on this point is as follows:

> Based on Husband's figures, this results in Husband having a negative marital estate of minus $14,230,990.50, and the Wife receiving a marital estate as valued by Husband, of $13,235,015.50, a clearly inequitable result. (See Appellant's Rule 7 Ta[b]le).

The entirety of his argument is the above-quoted assertion. Other than citing to his 45-page Rule 7 table, Husband does not provide any explanation for how he arrives at these totals other than they are "[b]ased on Husband's figures . . ." rather than those found by the Trial Court. We therefore conclude that Husband has waived this argument due to his failure to comply with Tenn. R. App. P. 27(A).

Tennessee Rule of Appellate Procedure 27 provides:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

* * *

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]

Husband's blanket assertion, without explanation, that he was awarded a negative share of the marital estate does not comply with Rule 27 and is therefore waived. *See Sneed v. Bd. of Pro. Resp. of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."); *In re Estate of Quinn*, No. M2022-00532-COA-R3-CV, 2023 WL 5013257, at *11 (Tenn. Ct. App. Aug. 7, 2023) ("[W]e are 'under no duty to blindly search the record to find . . . evidence,' nor can Plaintiff shift this burden to us.") (quoting *Pearman v. Pearman*, 781 S.W.2d 585, 588 (Tenn. Ct. App. 1989)). As we have previously explained, we are "'not like pigs, hunting for truffles' that may be buried in the record, or, for that matter, in the parties' briefs on appeal." *Nunley v. Farrar*, No. M2020-00519-COA-R3-CV, 2021 WL

1811750, at *6 (Tenn. Ct. App. May 6, 2021) (citing *Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015)).

Upon our review of the record, we conclude that the evidence does not preponderate against the Trial Court's findings and affirm the Trial Court's division of the marital estate.

### C. Alimony *in solido*

Our Supreme Court has previously explained the standard of review for awards of alimony as follows:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate

- 27 -

court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

With regard to alimony *in solido* specifically, our High Court has explained:

Current Tennessee law recognizes several distinct types of spousal support, including (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony.

* * *

The second type of support, alimony in solido, is also a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36-5-121(h)(1); *Broadbent*, 211 S.W.3d at 222 ("Alimony *in solido* consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." *Burlew*, 40 S.W.3d at 471. Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Unlike alimony in futuro, the other form of long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse. Tenn. Code Ann. § 36-5-121(h)(2)-(3); *see Riggs* [*v. Riggs*], 250 S.W.3d [453,] at 456 n. 3 [(Tenn. Ct. App. 2007)].

* * *

Finally, in determining whether to award spousal support and, if so, determining the nature, amount, length, and manner of payment, courts consider several factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs*, 250 S.W.3d at 457. *See also Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 342; *Burlew*, 40 S.W.3d at 470. Carefully adhering to the statutory framework for awarding spousal support, both in terms of awarding the correct type of support and for an appropriate amount and time, fulfills not only the statutory directives but also alimony's fundamental purpose of eliminating spousal dependency where possible.

*Id.* at 107-10 (footnote omitted).

Husband presents two arguments related to the Trial Court's alimony *in solido* award to Wife: (1) there was no evidence related to Wife's current needs as of the August 2022 hearing and (2) the Trial Court erred by awarding interest on the alimony *in solido* award. We begin our review of this issue by presuming that the Trial Court's decision to award Wife alimony *in solido* in the amount of $6,507,977.50 is correct and viewing the evidence in the light most favorable to this decision. Husband did not raise the issue of Wife's change in circumstances or needs to the Trial Court on remand or request that the parties resubmit proof related to their incomes or needs. From our careful reading of the transcripts from the August 2022 hearing, the understanding between the parties and the Trial Court was that proof was being submitted solely related to the re-valuation of Vanquish Worldwide based upon the proceeds from the Government Claim. Again, Husband did not dispute the purpose of the hearing, or make an argument at the end of proof related to whether Wife was entitled to alimony *in solido* based upon a change in her circumstances. We therefore find this issue waived as we did in addressing Husband's similar argument related to the Trial Court's division of marital assets. We further find that the Trial Court did not abuse its discretion by its award of alimony *in solido* to Wife and that this award properly effectuates the equitable division of marital property.

With respect to Husband's argument regarding the Trial Court's award of interest on Wife's alimony *in solido* award, we agree with Husband. This Court has previously reiterated the Supreme Court's holding in *Price v. Price*, 472 S.W.2d 732, 734 (Tenn. 1971), explaining:

In *Price*, our supreme court explained that a recipient of alimony in solido payable in monthly installments was not entitled to post-judgment interest where "[the wife] only became entitled to the use of any part of the money represented by this judgment on the date the first installment was due." *Id.*; *see also Norman v. Norman*, No. M2015-02364-COA-R3-CV, 2017 WL 3705121, at *8 (Tenn. Ct. App. Aug. 28, 2017) ("[T]he recipient of an award of alimony in solido payable in installments is not entitled to interest on the judgment from the date of entry.").

*Tarver v. Tarver*, No. W2017-01556-COA-R3-CV, 2019 WL 1200274, at *12 (Tenn. Ct. App. Mar. 13, 2019). Wife did not present evidence, and the Trial Court did not find, that Husband had been past-due on alimony payments. As this Court stated in *Norman v. Norman*, No. M2015-02364-COA-R3-CV, 2017 WL 3705121, at *8 (Tenn. Ct. App. Aug. 28, 2017), "interest is only payable after an installment is past due." We, therefore, modify the Trial Court's award of post-judgment interest on Wife's alimony *in solido* award to provide for interest only after a payment is past due.

### D. Lien on Husband's Ownership Interests

Husband lastly argues that the Trial Court erred by placing a lien upon and ordering an assignment in trust to Wife of Husband's ownership interests in his LLCs. In the Trial Court's 2022 Judgment, the Trial Court ordered the following:

The Husband's threats to bankrupt the parties' businesses or hide assets so the Wife would receive nothing in the divorce, plus his post-divorce actions once again indicate the acute need to secure the alimony payments due to the Wife. Accordingly, the Court will impress a lien upon, and Order an assignment in trust to the Wife of the Husband's <u>ownership interests</u> in all of the businesses listed in Ex. 1, however those interests are evidenced, to secure these payments. However, so long as the Husband is current in his alimony payments and the companies remain solvent, <u>he may exercise all the rights incident to those interests</u>, and the Wife shall take no enforcement actions against the businesses. Finally, so long as any part of the alimony obligation remains unpaid the Husband will be enjoined and prohibited from making any transfers or expenditures of, or from the businesses except those made in the usual and ordinary course of business.

(Paragraph numbering omitted.) (Emphasis added.) To the extent that the Trial Court's provision may be interpreted as a directive that liens be placed upon the property of or that restrictions be put in place on the actions of nonparty LLCs owned by Husband, we agree with Husband that that would present an issue and contravene this Court's decision in *Barton I*. As this Court stated in *Barton I*,

- 31 -

[T]here is no statutory authority here for the court to act upon parcels of
real estate owned by the LLCs. Despite Husband's 100 percent ownership
interest in the LLCs that owned these parcels of real estate, Tennessee Code
Annotated section 48-249-502(a) provides that "[a] member has no interest
in specific LLC property. All property transferred to or acquired by an
LLC is property of the LLC."

*Barton*, 2020 WL 6580562, at *5. However, the Trial Court clearly intended to place a
lien and an assignment in trust to Wife upon Husband's <u>ownership interests</u> in all of his
LLCs. Given that Husband's ownership interests were marital property and that Husband
was obviously a party to this suit, we affirm this provision, while clarifying that it should
not be interpreted as a restriction upon the nonparty LLCs themselves, but only
Husband's ownership interests.

### F. Wife's Request for Attorney's Fees on Appeal

Wife requests this Court grant her attorney's fees on appeal as alimony *in solido*,
arguing that she is economically disadvantaged in comparison to Husband and that much
of the purported error that Husband complains of on appeal was "not error or was of his
own making." We deem Wife's request waived, however, due to her failure to designate
this as an issue. *See Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct.
App. 2002) ("We consider an issue waived where it is argued in the brief but not
designated as an issue."); *see also Barrios v. Simpkins*, No. M2021-01347-COA-R3-CV,
2022 WL 16846642, at *14-15 (Tenn. Ct. App. Nov. 10, 2022) (finding that the appellees
waived their request for attorney's fees by failing to include a separate statement of the
issues in their responsive brief, despite including the issue in their brief's table of
contents). We therefore deny Wife's request for an award of attorney's fees on appeal as
alimony *in solido*.

### Conclusion

Upon our review, we modify the Trial Court's award of interest on Wife's award
of alimony *in solido*. We otherwise affirm the balance of the Trial Court's judgment.
We additionally deny Wife's request for attorney's fees on appeal. This matter is
remanded to the Chancery Court for Blount County for collection of costs below. Costs
on appeal are assessed equally against the Appellant, Eric Wayne Barton, and his surety,
if any, and Appellee, Mechelle Scholmer Barton.

_____
D. MICHAEL SWINEY, CHIEF JUDGE